FILED

2016 JUN -1 PM 2:12

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY:_____

**UNDER SEAL**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

September 2015 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. SA CR 16 **SACR16-00076** |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Mail Fraud; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1957: Money Laundering; 18 U.S.C. § 2(a): Aiding and Abetting; 18 U.S.C. § 2(b): Causing an Act to Be Done; 18 U.S.C. §§ 981(a)(1)(C), 982; 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| GILBERT "GIL" N. MICHAELS, JERRY P. FELDMAN, ANJANETTE S. LESTER, GLEN K. KATAYAMA, TIFFANY M. OSTRANDER, SEAN S. MOUSTAKAS, JAMES R. MILHEISER, THOMAS A. SANETTI, CYNTHIA A. WEEKES, MICHAEL B. WEEKES, DANIEL C.J. ELLIS, LEAH D. JOHNSON, JOHN A. BUZZARD, JONATHAN M. BRIGHTMAN, STEPHEN D. PAINE, SHARON SCANDALIATO VIRAG, GLEN M. DIAMOND III, TAMMI L. WILLIAMS, CHRISTINA M. CADENA, MICHELLE C. NUNEZ, FRANCIS "FRANK" S. SCIMECA, CYNDA L. HILL, and HENRY L. HILL II, | |
| Defendants. | |

1    The Grand Jury charges:

2                          COUNT ONE

3                       [18 U.S.C. § 1349]

4  A.   INTRODUCTORY ALLEGATIONS

5         The Defendants

6    At all times relevant to this Indictment:

7         1.   Defendant GILBERT "GIL" N. MICHAELS ("MICHAELS")

8  resided and conducted business in Los Angeles County, within the

9  Central District of California.  Defendant MICHAELS owned,

10 controlled, or was affiliated with G.N.M. Financial Services

11 Inc., doing business as ("DBA") IDC SERVCO ("IDC SERVCO"), and

12 Mytel International, Inc. ("Mytel").

13        2.   Defendant JERRY P. FELDMAN ("FELDMAN") resided and

14 conducted business in Los Angeles County, within the Central

15 District of California.  Defendant FELDMAN was the Vice

16 President of IDC SERVCO.

17        3.   Defendant ANJANETTE S. LESTER ("LESTER") resided and

18 conducted business in Orange and Los Angeles Counties, within

19 the Central District of California.  Defendant LESTER owned,

20 controlled, or was affiliated with Supply Processing Center,

21 Inc., and Invoice Processing Center, Inc.

22        4.   Defendant GLEN K. KATAYAMA ("KATAYAMA") resided and

23 conducted business in Orange and Los Angeles Counties, within

24 the Central District of California.  Defendant KATAYAMA owned,

25 controlled, or was affiliated with GK Ventures, Inc., Supply

26 Management Center, and Copier Products Center.

27        5.   Defendant TIFFANY M. OSTRANDER ("OSTRANDER") resided

28 and conducted business in Orange and Los Angeles Counties,

within the Central District of California.  Defendant OSTRANDER owned, controlled, or was affiliated with Epic Distribution, Inc., and Supply Fulfillment Center.

6.  Defendant SEAN S. MOUSTAKAS ("MOUSTAKAS") resided and conducted business in Orange and Los Angeles Counties, within the Central District of California.  Defendant MOUSTAKAS owned, controlled, or was affiliated with Epic Distribution, Inc., and Supply Fulfillment Center.

7.  Defendant JAMES R. MILHEISER ("MILHEISER") resided and conducted business in Orange and Los Angeles Counties, within the Central District of California.  Defendant MILHEISER owned, controlled, or was affiliated with Material Distribution Center, PDM Marketing, Bird Coop Industries, Inc., and Copier Products Center.

8.  Defendant THOMAS A. SANETTI ("SANETTI") resided and conducted business in Orange and Los Angeles Counties, within the Central District of California.  Defendant SANETTI owned, controlled, or was affiliated with West Coast Distribution, Uncaged Industries, Inc., Material Distribution Center, Bird Coop Industries, Inc., and Copier Products Center.

9.  Defendant CYNTHIA A. WEEKES ("C. WEEKES") resided and conducted business in Los Angeles County, within the Central District of California.  Defendant C. WEEKES owned, controlled, or was affiliated with Coastal Distribution Center, Inc.

10.  Defendant MICHAEL B. WEEKES ("M. WEEKES") resided and conducted business in Los Angeles County, within the Central of California.  Defendant M. WEEKES owned, controlled, or was affiliated with Coastal Distribution Center, Inc.

11.   Defendant DANIEL C. J. ELLIS ("ELLIS") resided and conducted business in Los Angeles County, within the Central District of California.  Defendant ELLIS owned, controlled, or was affiliated with Turner Supply Company, Inc., Tech Transfer, Inc., DBA Delray Supply Company.

12.   Defendant LEAH D. JOHNSON ("JOHNSON") resided and conducted business in Orange and Los Angeles Counties, within the Central District of California.  Defendant JOHNSON owned, controlled, or was affiliated with Capital Supply Center, and LJT Distribution, Inc.

13.   Defendant JOHN A. BUZZARD ("BUZZARD") resided in San Diego County, and conducted business in Orange and Los Angeles Counties, within the Central District of California.  Defendant BUZZARD owned, controlled, or was affiliated with Capital Supply Center, and LJT Distribution, Inc.

14.   Defendant JONATHAN M. BRIGHTMAN ("BRIGHTMAN") resided and conducted business in Los Angeles County, within the Central District of California.  Defendant BRIGHTMAN owned, controlled, or was affiliated with Copy Com Distribution, Inc., Independent Cartridge Supplier, and Corporate Products.

15.   Defendant STEPHEN D. PAINE ("PAINE") resided and conducted business in Los Angeles County, within the Central District of California.  Defendant PAINE owned, controlled, or was affiliated with Case Distribution Services, Inc.

16.   Defendant SHARON SCANDALIATO VIRAG ("VIRAG") resided and conducted business in Los Angeles County, within the Central District of California.  Defendant SCANDALIATO owned, controlled, or was affiliated with XL Supply, Inc.

4

17.   Defendant GLEN M. DIAMOND III ("DIAMOND") resided and conducted business in Orange and Los Angeles Counties, within the Central District of California.   Defendant DIAMOND owned, controlled, or was affiliated with Specialty Business Center, Specialty Office Products, Inc., and Elite Office Supplies, Inc.

18.   Defendant TAMMI L. WILLIAMS ("WILLIAMS") resided and conducted business in Orange and Los Angeles Counties, within the Central District of California.   Defendant WILLIAMS controlled or was affiliated with Rancho Office Supply, Select Imaging Supplies, Specialty Business Center, and Elite Office Supplies, Inc.

19.   Defendant CHRISTINA M. CADENA ("CADENA") resided in San Diego County, and conducted business in Los Angeles County, within the Central District of California.   Defendant CADENA owned, controlled, or was affiliated with Warehouse Service Center, Inc., and Resource Processing Center, Inc.

20.   Defendant MICHELLE C. NUNEZ ("NUNEZ") resided in Riverside County, and conducted business in Los Angeles County, within the Central District of California.   Defendant NUNEZ owned, controlled, or was affiliated with Warehouse Service Center, Inc., and Resource Processing Center, Inc.

21.   Defendant FRANCIS "FRANK" S. SCIMECA ("SCIMECA") resided and conducted business in Los Angeles County, within the Central District of California.   Defendant SCIMECA owned, controlled, or was affiliated with Supply Central Distribution, Inc., and Priority Office Supply.

22.   Defendant CYNDA L. HILL ("C. HILL") resided and conducted business in San Bernardino and Los Angeles Counties,

within the Central District of California. Defendant C. HILL owned, controlled, or was affiliated with Distribution Service Center, Inc., and C&H Management.

23. Defendant HENRY L. HILL II ("H. HILL") resided and conducted business in San Bernardino and Los Angeles Counties, within the Central District of California. Defendant H. HILL owned, controlled, or was affiliated with Distribution Service Center, Inc., and C&H Management.

Legal Actions Against Defendant MICHAELS

24. On November 16, 1988, a Stipulated Final Order and Judgment were entered against defendant MICHAELS and Mytel in *Federal Trade Commission v. Mytel International, Inc., et al.*, CV 87-7259-JMI (GHKx), in the Central District of California. The order prohibited defendant MICHAELS and Mytel: (1) from representing in any manner that they were affiliated with a consumer's usual supplier of photocopier supplies or the manufacturer of the consumer's photocopier; (2) from making any reference to a price change or price increase unless the reference was immediately followed by a disclosure that the price referred to was unrelated to any price previously paid by the consumer; and (3) from requesting to check or verify any information about the consumer or the consumer's office equipment. The order required defendant MICHAELS and Mytel to develop a program designed to reveal ongoing business practices of deception by independent sales companies, and to terminate relationships with independent sales companies that defendant MICHAELS or Mytel knew or should have known were engaged in ongoing deceptive business practices. The order prohibited

defendant MICHAELS and Mytel from collecting payments from consumers or failing to refund all payments to consumers where defendant MICHAELS or Mytel knew or should have known that the purchase order was procured by fraud.  Defendant MICHAELS and Mytel were required to provide a copy of the Final Judgment and Order to all independent sales companies that conducted business with defendant MICHAELS or Mytel.  Mytel was ordered to pay $240,000 to the United States Treasury.

25.  On April 11, 1995, a Final Judgment and Permanent Injunction were entered against defendant MICHAELS and G.N.M. Financial Services, Inc., in *State of California v. G.N.M. Financial Services, Inc.*, et al., No. 539890, in the Sacramento County Superior Court, California.  The injunction prohibited defendant MICHAELS and G.N.M. from making misrepresentations in the sales of toner or other office supplies, and required defendant MICHAELS and G.N.M. to provide copies of the Final Judgment and Permanent Injunction to each telemarketing firm that conducted business with defendant MICHAELS or G.N.M.  The judgment required defendant MICHAELS and G.N.M. to pay $53,500 to the State of California.

26.  On September 8, 1995, an Order for Consent Judgment was entered against defendant MICHAELS and G.N.M. Financial Services, Inc., DBA Interstate Distribution Center in *State of Wisconsin v. Mytel International, Inc.*, et al., 94-CV-3796, in the Dane County Circuit Court, Wisconsin.  The order required defendant MICHAELS and G.N.M. to provide copies of the Final Judgment and Order from the 1988 Federal Trade Commission case to all independent sales companies that conducted business with

defendant MICHAELS and G.N.M., and to pay $4,000 to the State of Wisconsin.

27.   On September 14, 1995, an Assurance of Voluntary Compliance was entered into by MICHAELS and G.N.M. Financial Services, Inc., in *State of Idaho v. G.N.M. Financial Services, Inc., dba Interstate Distribution Center, et al.*, No. CV OC 950277ID, in the District Court of the Fourth Judicial District, Ada County, Idaho.   In the Assurance of Voluntary Compliance, defendant MICHAELS and G.N.M. agreed to comply with Idaho consumer protection laws, and pay $4,000 to the State of Idaho.

28.   On June 25, 2004, an Agreed Final Judgment and Permanent Injunction were entered against defendant MICHAELS, G.N.M. Financial Services, Inc., DBA Interstate Distribution Center, and Mytel in *Lanier Worldwide, Inc. v. IDC Financial Services, Inc., et al.*, CV 02-8667-RSWL(Ex), in the Central District of California.   The injunction prohibited defendant MICHAELS, G.N.M., and Mytel from representing they were authorized Lanier distributors, were affiliated with Lanier, or were the purchaser's regular supplier of Lanier photocopier products.   The order required that a copy of the judgment be provided to all independent sales companies that conducted business with defendant MICHAELS, G.N.M., or Mytel.

29.   On August 1, 2007, a Stipulated Judgment for Permanent Injunction, signed by defendant MICHAELS as president of G.N.M. and Mytel, was entered against G.N.M. Financial Services, Inc., DBA IDC SERVCO, and Mytel in *Toshiba America Business Solutions, Inc., v. G.N.M. Financial Services, Inc., et al.*, SACV 07-862-CJC(RNBx), in the Central District of California.   The

1   injunction prohibited G.N.M. and Mytel from representing they
2   were authorized Toshiba distributors, were affiliated with
3   Toshiba, or were the purchaser's regular supplier of Toshiba
4   photocopier products.  The order required that a copy of the
5   judgment be provided to all independent sales companies that
6   conducted business with G.N.M. or Mytel.
7       30.  On December 18, 2013, an Assurance of Voluntary
8   Compliance was entered into by defendant MICHAELS, G.N.M.
9   Financial Services, Inc., DBA IDC SERVCO, and Mytel in *John D.*
10  *Sours, Administrator, Fair Business Practices Act, v. Gilbert*
11  *Michaels, et al.*, No. 2013CV240445, in the Superior Court of
12  Fulton County, Georgia.  The assurance prohibited the defendant
13  MICHAELS, G.N.M., and Mytel from representing to any person in
14  Georgia that they were the associated with the office supplier
15  with whom those persons had an established business
16  relationship.  The assurance barred defendant MICHAELS, G.N.M.,
17  and Mytel from conducting business related to office supplies in
18  Georgia, and required the payment of $150,000 in restitution and
19  $20,000 in penalties and investigative costs to the State of
20  Georgia.
21  B.   THE OBJECT OF THE CONSPIRACY
22      31.  Beginning in or around 1988, and continuing to the
23  present, in Orange and Los Angeles Counties, within the Central
24  District of California, and elsewhere, defendants MICHAELS,
25  FELDMAN, LESTER, KATAYAMA, OSTRANDER, MOUSTAKAS, MILHEISER,
26  SANETTI, C. WEEKES, M. WEEKES, ELLIS, JOHNSON, BUZZARD,
27  BRIGHTMAN, PAINE, VIRAG, DIAMOND, WILLIAMS, CADENA, NUNEZ,
28  SCIMECA, C. HILL, and H. HILL, and others known and unknown to

1  the Grand Jury, knowingly combined, conspired, and agreed to

2  commit mail fraud, in violation of Title 18, United States Code,

3  Section 1341.

4  C.  THE MANNER AND MEANS OF THE CONSPIRACY

5      32.  The object of the conspiracy was carried out, and was

6  to be carried out, in substance, as follows:

7          a.  Defendants LESTER, KATAYAMA, OSTRANDER,

8  MOUSTAKAS, MILHEISER, SANETTI, C. WEEKES, M. WEEKES, ELLIS,

9  JOHNSON, BUZZARD, BRIGHTMAN, PAINE, VIRAG, DIAMOND, WILLIAMS,

10 CADENA, NUNEZ, SCIMECA, C. HILL, and H. HILL operated or worked

11 at telemarketing businesses that sold toner for photocopy

12 machines and printers to small businesses, charities (such as

13 Easter Seals Disability Services and the United Way), schools,

14 churches, city governments, and other entities in the United

15 States and Canada (the "Telemarketing Businesses").

16         b.  Defendant MICHAELS was the owner and president of

17 IDC SERVCO and MYTEL, and defendant FELDMAN was the vice

18 president of IDC SERVCO.  IDC SERVCO fulfilled orders for the

19 Telemarketing Businesses, which were deemed "independent sales

20 companies," by shipping toner to victims, collecting payment for

21 the toner, and paying the Telemarketing Businesses a percentage

22 on the sales of toner, after withholding a portion in reserve

23 for returns and chargebacks.

24         c.  Defendant MICHAELS signed Independent Sales

25 Company Service Agreements with the owners of the Telemarketing

26 Businesses that included the following language:

27     No Independent Sales Company shall, in connection with the

28     offering for sale of Merchandise or the consummation of an

                                  10

1    Order . . . Fail, at the outset of any contact with a
2    Customer to solicit an order, to make the following
3    disclosure clearly and conspicuously:

4         I AM CALLING FROM (Independent Sales Company) OF
5         (city, state) TO OFFER COPIER (or other type) SUPPLIES
6         FOR SALE. (Independent Sales Company) IS NOT
7         AFFILIATED WITH YOUR USUAL SUPPLIER OR WITH ANY
8         MANUFACTURER-AUTHORIZED DISTRIBUTOR OF THESE SUPPLIES.
9         WE ARE NOT AFFILIATED WITH THE MANUFACTURER, SELLER,
10        LESSOR, OR SERVICER OF YOUR COPIER (or other
11        equipment).

12   In addition to the agreements, owners of the Telemarketing
13   Businesses signed forms acknowledging they had been provided
14   copies of judgments against defendant MICHAELS, G.N.M., and
15   Mytel, including *Federal Trade Commission v. Mytel*
16   *International, Inc., et al.*, CV 87-7259-JMI(GHKx); *State of*
17   *California v. G.N.M. Financial Services, Inc., et al.*, No.
18   539890; *State of Wisconsin v. Mytel International, Inc., et al.*,
19   94-CV-3796; *Lanier Worldwide, Inc. v. IDC Financial Services,*
20   *Inc., et al.*, CV 02-8667-RSWL(Ex); and *Toshiba America Business*
21   *Solutions, Inc., v. G.N.M. Financial Services, Inc., et al.*,
22   SACV 07-862-CJC(RNBx).

23        33.  To execute the aforementioned scheme, defendants
24   knowingly engaged in fraudulent and deceptive acts, practices
25   and devices, and caused and aided and abetted false and
26   deceptive statements to be communicated to, and material
27   information to be concealed and omitted from, victims,
28   including, without limitation, the following:

a. Employees of the Telemarketing Businesses called victims and claimed to be, or to be affiliated with, the victims' regular supplier of toner;

b. Employees of the Telemarketing Businesses would tell victims that the price of toner had increased, that the victims were not notified, and the victims were being given a chance to purchase toner at the previous lower price;

c. Employees of the Telemarketing businesses would send by facsimile order confirmation forms for victims to sign;

d. IDC SERVCO would ship toner and send invoices to victims;

e. Victims would mail checks to pay for the toner to IDC SERVCO; and

f. Upon discovering they had been defrauded, victims would call IDC SERVCO. IDC SERVCO employees told victims who said they were deceived into ordering the toner that the Telemarketing Businesses were independent companies, that IDC SERVCO was not aware of claims made by the Telemarketing Businesses, and IDC SERVCO could not cancel the order or refund money because the victims had signed order confirmation forms. In many cases, IDC SERVCO employees would threaten victims with collections or legal action if they did not pay an IDC SERVCO invoice. In cases where IDC SERVCO agreed to take toner back, victims were forced to pay high "restocking fees."

34. At the time these statements were made to victims, such statements were false, and defendants knew they were false, in that:

1              a.    The Telemarketing Businesses were not the

2    victims' usual supplier of toner, were not affiliated with the

3    victims' usual supplier of toner, and most victims received

4    toner as no extra cost as part of their service agreements with

5    their regular suppliers;

6              b.    There had been no recent price increase for

7    toner, and the prices victims were charged for toner were two to

8    ten times the regular cost of toner; and

9              c.    The Telemarketing Businesses were not independent

10   of IDC SERVCO in that:

11             i.    IDC SERVCO and defendant MICHAELS were

12   guarantors on all $100,000 surety bonds required by the State of

13   California for each Telemarketing Business, and defendant

14   MICHAELS had the right to cancel any surety bond;

15             ii.   IDC SERVCO required owners of each

16   Telemarketing Business to sign UCC-1 liens pledging their assets

17   as collateral for any debts owed to IDC SERVCO;

18             iii.  IDC SERVCO required the owners of each

19   Telemarketing Business to sign personal guarantees to pay IDC

20   SERVCO in the event payment was not made for toner that was

21   shipped;

22             iv.   IDC SERVCO provided the Telemarketing

23   Businesses catalogs that set the maximum price the Telemarketing

24   Businesses were allowed to charge for various brands of toner;

25             v.    Defendant MICHAELS approved name changes for

26   Telemarketing Businesses that accumulated too many victim

27   complaints;

28

vi.   IDC SERVCO advanced money to the Telemarketing Businesses for payroll and to expand the businesses;

vii.   IDC SERVCO received and maintained complaints from thousands of victims that set forth the deceptive practices of the Telemarketing Businesses;

viii.   IDC SERVCO responded directly to victims' complaints and had a script for use when victims called that stated if victims claimed that the Telemarketing Business said it was the victims' usual supplier of toner or claimed there had been a price increase that the IDC SERVCO employee was to deny any knowledge of such claims; and

ix.   Defendant MICHAELS had the final say in resolving victims' complaints.

35.   By devising, executing, and participating in the above scheme, defendants induced more than more than 50,000 victims to send more than $126 million to IDC SERVCO.

D.   OVERT ACTS

36.   In furtherance of the conspiracy, and to accomplish the object of the conspiracy, defendants MICHAELS, FELDMAN, LESTER, KATAYAMA, OSTRANDER, MOUSTAKAS, MILHEISER, SANETTI, C. WEEKES, M. WEEKES, ELLIS, JOHNSON, BUZZARD, BRIGHTMAN, PAINE, VIRAG, DIAMOND, WILLIAMS, CADENA, NUNEZ, SCIMECA, C. HILL, and H. HILL, and others known and unknown to the Grand Jury, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On or about July 17, 2000, defendants MICHAELS, NUNEZ, and CADENA signed an Independent Sales Company Service Agreement between G.N.M. Financial Services, Inc., and Warehouse Service Center, Inc.

Overt Act No. 2:   On or about June 3, 2002, defendants MICHAELS and BRIGHTMAN signed an Independent Sales Company Service Agreement between G.N.M. Financial Services, Inc., and Copy Com Distribution, Inc.

Overt Act No. 3:   On or about December 9, 2002, defendants MICHAELS, SANETTI, and MILHEISER signed an Independent Sales Company Service Agreement between G.N.M. Financial Services, Inc., and Bird Coop Industries, Inc., DBA Material Distribution Center.

Overt Act No. 4:   On or about November 18, 2003, defendants MICHAELS and VIRAG signed an Independent Sales Company Service Agreement between G.N.M. Financial Services, Inc., and XL Supply, Inc.

Overt Act No. 5:   On or about January 16, 2006, defendant MICHAELS wrote a letter to Platte River Insurance Company concerning surety bonds for the Telemarketing Businesses, which were required by the State of California. Defendant MICHAELS wrote, "Pleased be advised that I, Gil Michaels, President and sole stockholder of [Mytel and G.N.M.] and as an individual, completely and thoroughly understand that I am liable for the Telemarketing Bonds issued at my direction."

Overt Act No. 6:   On or about March 1, 2006, defendants MICHAELS and SCIMECA signed an Independent Sales

1  Company Service Agreement between G.N.M. Financial Services,

2  Inc., and Supply Central Distribution, Inc.

3          Overt Act No. 7:    On or about June 20, 2006,

4  defendants MICHAELS and KATAYAMA signed an Independent Sales

5  Company Service Agreement between G.N.M. Financial Services,

6  Inc., and GK Ventures, Inc., DBA Supply Management Center.

7          Overt Act No. 8:    On or about June 26, 2006,

8  defendants MICHAELS and SANETTI signed an Independent Sales

9  Company Service Agreement between G.N.M. Financial Services,

10  Inc., and Uncaged Industries, Inc., DBA West Coast Distribution.

11          Overt Act No. 9:    On or about June 4, 2007,

12  defendants MICHAELS and MILHEISER signed an Independent Sales

13  Company Service Agreement between G.N.M. Financial Services,

14  Inc., and PDM Marketing, Inc., DBA Material Distribution Center.

15          Overt Act No. 10:    On or about October 22, 2007,

16  defendants MICHAELS and LESTER signed an Independent Sales

17  Company Service Agreement between G.N.M. Financial Services,

18  Inc., and Supply Processing Center, Inc.

19          Overt Act No. 11:    On or about July 17, 2008,

20  defendant FELDMAN sent defendant MICHAELS an email with the

21  subject "National fax confirmation" concerning the order

22  confirmation forms that the Telemarketing Businesses faxed to

23  victims.   The email stated in part,

24          Initially, Dan felt everything was going well with the new

25          fax but he called me today and said they should be at about

26          80 fronts this week and they're down to around 30 with

27          salesman and verifiers pretty upset!   Some consumers have

28          been reading the big disclosure back to them saying things

along the lines as "see, we're not even supposed to be
buying from you" . . . Shelly also had a big problem with
it and I've been allowing her some additional time with the
old fax to keep her together . . . I think this change is
too big a shock for those ISC's [Independent Sales
Companies] which were not used to doing a larger volume of
Cal. front business. From what I've seen/heard, I suggest
allowing an interim return to the old national fax for
those who want to do that, while we look at some other
options. I'd like to get back to Dan today. Let me know
what you think.

Overt Act No. 12: On or about July 21, 2008,
defendant MICHAELS forwarded an email to defendant FELDMAN that
discussed the fact that rebutting complaints on the Internet
actually raised a company's bad reputation on the Internet
because the rebuttal re-indexed the original complaint and
boosted that page's ranking in search engines.

Overt Act No. 13: On or about July 22, 2008,
defendant FELDMAN replied to the email identified in Overt Act
No. 12 that they had done about ten on-line rebuttals but
planned to stop. The email stated, "Rip-Off Report should be
sued right along with the BBB who just put the brakes on our
membership process (as anticipated)."

Overt Act No. 14: On or about February 12, 2009,
defendants MICHAELS and H. HILL signed an Independent Sales
Company Service Agreement between G.N.M. Financial Services,
Inc., and Distribution Service Center.

1      <u>Overt Act No. 15:</u>   On or about June 22, 2009,

2 defendants MICHAELS and JOHNSON signed an Independent Sales

3 Company Service Agreement between G.N.M. Financial Services,

4 Inc., and Capital Supply Center.

5      <u>Overt Act No. 16:</u>   On or about July 10, 2009,

6 defendant FELDMAN sent defendant MICHAELS an email concerning

7 defendant LESTER.   The email stated, "She wants to pass on to

8 you that she's working on tightening up her business and asks

9 that you hang in there with her."

10      <u>Overt Act No. 17:</u>   On or about July 31, 2009,

11 defendant FELDMAN sent defendant MICHAELS an email concerning

12 fax confirmations and a Telemarketing Business that wanted to

13 make sales in Canada.   The email stated in part,

14      Should we work off the Calif. fax con[firmation] disclosure

15      format or the standard national fax style?   We also still

16      have to use the Toshiba fax when applicable.   Also, Dan

17      wants to know if we would allow him to do some test orders

18      to Canada first before opening it up to all ISCs.   I told

19      him that generally we would not handle things that way but

20      I would run it by you.

21      <u>Overt Act No. 18:</u>   On or about July 31, 2009,

22 defendant MICHAELS sent an email to defendant FELDMAN in

23 response to the email identified in Overt Act No. 17.   The email

24 stated, "Let's use the national.   What difference would it make

25 if we opened it [Canada] up to everyone?   What's he thinking

26 about?   Unless 'WE' want to test it first."

27      <u>Overt Act No. 19:</u>   On or about November 18, 2009,

28 defendant FELDMAN sent defendant MICHAELS an email stating that

1  defendant FELDMAN had IDC SERVCO employees keep track of how

2  often negative Internet searches were mentioned by customers

3  during first call-ins.  Defendant FELDMAN wrote that about 10%

4  of 168 callers in a three-day period mentioned seeing complaints

5  about IDC SERVCO on the Internet.

6       Overt Act No. 20:   On or about August 2, 2010,

7  defendant FELDMAN sent an email to defendant MICHAELS that

8  attached a document entitled "Additional DBA Concept" that

9  discussed removing IDC SERVCO's name from invoices and bank

10  checks "to avoid that name unnecessarily appearing on refunds."

11  The attached document stated in part,

12       Should we proceed with this or an alternate plan, we do not

13       know what the real benefit will be or how much time it may

14       successfully move us away from the Internet reputation

15       problems.  We can reasonably conclude that in most cases,

16       the ISC's prospective customers typically do not search the

17       Internet to make an advance purchasing decision but rather

18       do research based on suspicion or a complaint after receipt

19       of an invoice or shipment.

20       Overt Act No. 21:   On or about September 24, 2010,

21  defendants MICHAELS and OSTRANDER signed an Independent Sales

22  Company Service Agreement between G.N.M. Financial Services,

23  Inc., and Supply Fulfillment Center.

24       Overt Act No. 22:   On or about October 5, 2010,

25  defendant FELDMAN sent an email to defendant MICHAELS that

26  suggested seeking to dismiss an order against IDC SERVCO entered

27  by the State of North Carolina in 1985.  The email stated, "Our

28  N.C. Order was entered in June of '85.  In July 93 Marzec filed

1  unsuccessfully to have it dismissed which was allowed for under

2  the Order after 5 years.  I was thinking that after 17 years

3  since our first attempt, it might be worth having Lloyd give it

4  a shot."

5          Overt Act No. 23:   On or about October 5, 2010,

6  defendant MICHAELS replied to the email identified in Overt Act

7  No. 22, by writing, "Is it really worth it?  Do you have any

8  idea of the 'heat' level there these days?  If they are as

9  aggressive as they were it might better to leave it be."

10         Overt Act No. 24:   On or about February 1, 2011,

11 defendants MICHAELS and PAINE signed an Independent Sales

12 Company Service Agreement between G.N.M. Financial Services,

13 Inc., and Case Distribution Services, Inc.

14         Overt Act No. 25:   On or about May 10, 2011,

15 defendants MICHAELS and ELLIS signed an Independent Sales

16 Company Service Agreement between G.N.M. Financial Services,

17 Inc., and Tech Transfer, Inc., DBA Delray Supply.

18         Overt Act No. 26:   On or about May 18, 2011,

19 defendant FELDMAN sent defendant MICHAELS an email concerning

20 the creation of a new fictitious business name for IDC SERVCO to

21 do business in Canada.  The email stated, "I'm thinking of this

22 more in terms of a protective measure so a Canadian consumer's

23 internet search doesn't immediately bring up (as with entering

24 IDC SERVCO) false/derogatory 'U.S.' complaint info."

25         Overt Act No. 27:   On or about May 18, 2011,

26 defendant MICHAELS sent defendant FELDMAN a reply to the email

27 identified in Overt Act No. 26 that stated, "I like it.  Let's

28 think of a name."

1        Overt Act No. 28:   On or about August 15, 2011,

2    defendants MICHAELS and DIAMOND signed an Independent Sales

3    Company Service Agreement between G.N.M. Financial Services,

4    Inc., and Specialty Office Products, Inc., DBA Specialty

5    Business Center.

6        Overt Act No. 29:   On or about August 26, 2011,

7    defendants MICHAELS and C. WEEKES signed an Independent Sales

8    Company Service Agreement between G.N.M. Financial Services,

9    Inc., and Coastal Distribution Center, Inc.

10       Overt Act No. 30:   On or about February 9, 2012,

11   defendant PAINE, aided and abetted by defendants MICHAELS and

12   FELDMAN, caused the mailing of check no. 14687 in the amount of

13   $498.26 from victim Antero Resources Corp. in Denver, Colorado,

14   to IDC SERVCO.

15       Overt Act No. 31:   On or about February 12, 2012,

16   defendant LESTER, aided and abetted by defendants MICHAELS and

17   FELDMAN, caused the mailing of check no. 40332 in the amount of

18   $1,549.56 from victim United Steelworkers in Ashland, Kentucky,

19   to IDC SERVCO.

20       Overt Act No. 32:   On or about February 23, 2012,

21   defendant SCIMECA, aided and abetted by defendants MICHAELS and

22   FELDMAN, caused the mailing of check no. 52287 in the amount of

23   $2,168.07 from victim Yorba Linda Country Club in Yorba Linda,

24   California, to IDC SERVCO.

25       Overt Act No. 33:   On or about February 24, 2012,

26   defendant VIRAG, aided and abetted by defendants MICHAELS and

27   FELDMAN, caused the mailing of check no. 07121 in the amount of

28   $1,549.56 from victim YMCA in Youngstown, Ohio, to IDC SERVCO.

Overt Act No. 34:   On or about April 3, 2012,
defendants SANETTI and MILHEISER, aided and abetted by
defendants MICHAELS and FELDMAN, caused the mailing of check no.
2518 in the amount of $10,458 from victim Clarion Partners, LLC,
in Los Angeles, California, to IDC SERVCO.

Overt Act No. 35:   On or about April 6, 2012,
defendant BRIGHTMAN sent an email to IDC SERVCO employee Dina
McCarty asking to lower the "take out" or reserve held back by
IDC SERVCO for orders that might be returned.   The email stated,

> I'd like to get my t/o numbers lowered please.   We're
> currently reserved at 36% with 51,652.40.   If the t/o
> percentage is not lowered we will not have enough [for]
> operating expenses and we'll be asking for advances and
> reserve releases.   We also need capital for expanding and
> staffing a new office.   I spoke with Gil about this
> already.   We want our new room open by June 1st.   Please
> get back to me on Gil's decision.

Overt Act No. 36:   On or about April 20, 2012,
defendants CADENA and NUNEZ, aided and abetted by defendants
MICHAELS and FELDMAN, caused the mailing of check no. 14326 in
the amount of $6,162.86 from victim Giant Creative Strategy in
San Francisco, California, to IDC SERVCO.

Overt Act No. 37:   On or about April 25, 2012,
defendants C. HILL and H. HILL, aided and abetted by defendants
MICHAELS and FELDMAN, caused the mailing of check no. 60266 in
the amount of $2,741.70 from victim F&L Salvage & Towing in
Centralia, Illinois, to IDC SERVCO.

1        <u>Overt Act No. 38:</u>   On or about May 2, 2012, defendant

2    SANETTI, aided and abetted by defendants MICHAELS and FELDMAN,

3    caused the mailing of check no. 3758 in the amount of $1,549.56

4    from victim Agrilogic Insurance Services in Arlington, Texas, to

5    IDC SERVCO.

6        <u>Overt Act No. 39:</u>   On or about May 2, 2012, defendant

7    FELDMAN sent an email to defendant MICHAELS that stated,

8            The name "Imaging Supply Department" has caused confusion

9            with a consumer calling in here asking for our imaging

10           supply dept. - since it is printed on our invoice.  As

11           Imaging Supply Dept. is that ISC's corporate name, it would

12           be better and not difficult for the ISC to take out a DBA

13           without the word dept. in it.  That's one word which me may

14           want to restrict from ISC names.  Jim, Dina and I discussed

15           this but I said I would run it by you.

16       <u>Overt Act No. 40:</u>   On or about May 10, 2012,

17   defendant MICHAELS sent an email to IDC SERVCO employee Dina

18   McCarty about finding a bonded Telemarketing Business that would

19   let an un-bonded seller named Trish make sales under their bond.

20   The email stated, "Tell her [Trish] I'm trying to find someone

21   who will allow her to use an account number under their bond.

22   We should have something early next week."

23       <u>Overt Act No. 41:</u>   On or about May 15, 2012, IDC

24   SERVCO employee Dina McCarty replied to the email identified in

25   Overt Act No. 40.  The email stated that defendant VIRAG agreed

26   to let Trish make sales under her bond.  The email stated,

27   "Sharon said OK (with the hopes that Trish gets her own bond in

28   the near future)."

1     Overt Act No. 42:    On or about May 17, 2012,

2  defendant KATAYAMA, aided and abetted by defendants MICHAELS and

3  FELDMAN, caused the mailing of check no. 220379 in the amount of

4  $897.75 from victim City of Gainesville in Gainesville, Georgia,

5  to IDC SERVCO.

6     Overt Act No. 43:    On or about May 22, 2012, IDC

7  SERVCO employee Dina McCarty sent an email to defendant MICHAELS

8  concerning a request from defendant BUZZARD to obtain a new

9  fictitious business name.  The email stated, "John Buzzard is

10 checking with us to see if it's ok for him to get a new DBA – he

11 says there are too many complaints on the net with Capital

12 Supply."

13     Overt Act No. 44:    On or about May 22, 2012,

14 defendant BRIGHTMAN, aided and abetted by defendants MICHAELS

15 and FELDMAN, caused the mailing of check no. 15911 in the amount

16 of $397.86 from Aaron W. Maddox MD PC, in Detroit, Michigan, to

17 IDC SERVCO.

18     Overt Act No. 45:    On or about May 23, 2012,

19 defendants JOHNSON and BUZZARD, aided and abetted by defendants

20 MICHAELS and FELDMAN, caused the mailing of check no. 3774 in

21 the amount of $2,748.36 from victim Century 21 Tawas Realty in

22 East Tawas, Michigan, to IDC SERVCO.

23     Overt Act No. 46:    On or about May 25, 2012,

24 defendants DIAMOND and WILLIAMS, aided and abetted by defendants

25 MICHAELS and FELDMAN, caused the mailing of check no. 26122 in

26 the amount of $1,461.87 from victim Thibaut, Inc., DBA Thibaut

27 Wallpaper and Fabrics in Newark, New Jersey, to IDC SERVCO.

28

1        Overt Act No. 47:   On or about June 12, 2012, IDC

2   SERVCO employee Dina McCarty sent an email to defendant MICHAELS

3   stating that defendant VIRAG did not want Trish making sales

4   under her bond any longer.   The email stated, "Sharon called

5   today – she wants Trish off her bond.   Sharon got one of Trish's

6   customer calls and Sharon said that's it.   She says she didn't

7   realize that her XL name would be on Trish's order

8   confirmations."

9        Overt Act No. 48:   On or about June 26, 2012,

10  defendants CADENA and NUNEZ, aided and abetted by defendants

11  MICHAELS and FELDMAN, caused the mailing of check no. 4370 in

12  the amount of $9,758.04 from victim Criterion Capital Management

13  in San Francisco, California, to IDC SERVCO.

14       Overt Act No. 49:   On or about July 10, 2012,

15  defendant BRIGHTMAN, aided and abetted by defendants MICHAELS

16  and FELDMAN, caused the mailing of check no. 21071 in the amount

17  of $897.75 from victim Dermatology Specialists in Louisville,

18  Kentucky, to IDC SERVCO.

19       Overt Act No. 50:   On or about August 6, 2012,

20  defendant SCIMECA, aided and abetted by defendants MICHAELS and

21  FELDMAN, caused the mailing of check no. 1973 in the amount of

22  $1,214.06 from victim Kaiser Benefit Trust in Fontana,

23  California, to IDC SERVCO.

24       Overt Act No. 51:   On or about August 15, 2012,

25  defendants C. HILL and H. HILL, aided and abetted by defendants

26  MICHAELS and FELDMAN, caused the mailing of check no. 1029711 in

27  the amount of $2,324.34 from victim RW Armstrong in Cleveland,

28  Ohio, to IDC SERVCO.

1   <u>Overt Act No. 52:</u>   On or about August 23, 2012,

2   defendant ELLIS, aided and abetted by defendants MICHAELS and

3   FELDMAN, caused the mailing of check no. 2133 in the amount of

4   $1,162.17 from victim Apostolic Christian Preschool in Athens,

5   Alabama, to IDC SERVCO.

6   <u>Overt Act No. 53:</u>   On or about September 12, 2012,

7   defendants C. WEEKES and M. WEEKES, aided and abetted by

8   defendants MICHAELS and FELDMAN, caused the mailing of check no.

9   079795 in the amount of $811.43 from victim White & Company

10   Insurance in Santa Monica, California, to IDC SERVCO.

11   <u>Overt Act No. 54:</u>   On or about September 26, 2012,

12   defendant BRIGHTMAN sent an email to IDC SERVCO employee Dina

13   McCarty asking to lower the "take out" or reserve held back for

14   orders that might be returned.   The email stated,

15       Our reserve is now 8.5% above requirements at 35% and my

16       checks have been very low the past few weeks.   If I let go

17       staff to adjust, our numbers will drop off.   I'd like to

18       retain and even hire a few new people.   Please ask Gil if

19       he can adjust my take out percentage to 0% for a few

20       months, or until the account drops below reserve

21       requirements.   I need the capital to stay in the game.   Gil

22       can call me directly if he has any questions.

23   IDC SERVCO employee Dina McCarty forwarded the email to

24   defendant MICHAELS the same day.

25   <u>Overt Act No. 55:</u>   On or about September 26, 2012,

26   defendant MICHAELS replied to the email identified in Overt Act

27   No. 54, "I'll run the numbers on this."

28

1          Overt Act No. 56:   On or about November 13, 2012,
2    defendant ELLIS, aided and abetted by defendants MICHAELS and
3    FELDMAN, caused the mailing of check no. 54911 in the amount of
4    $5,314.68 from victim Essex Regional Education Services
5    Commission in Fairfield, New Jersey, to IDC SERVCO.

6          Overt Act No. 57:   On or about November 21, 2012,
7    defendant LESTER, aided and abetted by defendants MICHAELS and
8    FELDMAN, caused the mailing of check no. 13586 in the amount of
9    $3,318.90 from victim TriCity Heating and Cooling, LLC, in
10   Milford, Connecticut, to IDC SERVCO.

11         Overt Act No. 58:   On or about November 30, 2012,
12   defendants OSTRANDER and MOUSTAKAS, aided and abetted by
13   defendants MICHAELS and FELDMAN, caused the mailing of check no.
14   7500 in the amount of $3,318.90 from victim Signature FD in
15   Atlanta, Georgia, to IDC SERVCO.

16         Overt Act No. 59:   On or about December 7, 2012,
17   defendants OSTRANDER and MOUSTAKAS, aided and abetted by
18   defendants MICHAELS and FELDMAN, caused the mailing of check no.
19   4797 in the amount of $3,259.10 from victim PC Crane Services
20   DBA Mountain Crane Services in Riverton, Utah, to IDC SERVCO.

21         Overt Act No. 60:   On or about December 14, 2012,
22   defendant LESTER, aided and abetted by defendants MICHAELS and
23   FELDMAN, caused the mailing of check no. 124026 in the amount of
24   $3,439.06 from victim ACD, LLC, in Santa Ana, California, to IDC
25   SERVCO.

26         Overt Act No. 61:   On or about November 15, 2012,
27   defendant KATAYAMA, aided and abetted by defendants MICHAELS and
28   FELDMAN, caused the mailing of check no. 1159857 in the amount

1  of $1,461.87 from victim Bluegreen Vacations Unlimited in Boca

2  Raton, Florida, to IDC SERVCO.

3       Overt Act No. 62:  On or about January 16, 2013, IDC

4  SERVCO employee Dina McCarty sent defendant MICHAELS an email

5  concerning a request from defendant BUZZARD for an advance of

6  money.  The email stated, "John Buzzard is crying for 500 more.

7  Says he doesn't want to accept any front orders in fear he won't

8  be able to pay them.  (That's a new one.)"

9       Overt Act No. 63:  On or about January 18, 2013, IDC

10  SERVCO employee Dina McCarty sent an email to defendant MICHAELS

11  concerning a request from defendant KATAYAMA for an advance of

12  money.  The email stated, "Glen says he needs 500 more - needs

13  to cover checks that may bounce.  Amanda forgot to put his

14  advance in on Wed."

15       Overt Act No. 64:  On or about February 13, 2013, IDC

16  SERVCO employee Dina McCarty sent an email to defendant MICHAELS

17  regarding a request from defendant C. WEEKES for an advance of

18  money.  The email stated, "Cynthia is crying for 1000 more

19  today.  I told her I wasn't sure that was going to happen

20  because she is going the 'wrong' way."

21       Overt Act No. 65:  On or about February 13, 2013,

22  defendant MICHAELS replied to the email identified in Overt Act

23  No. 64, "Ok, but we are going to have to tighten up from here on

24  out."

25       Overt Act No. 66:  On or about March 14, 2013, IDC

26  SERVCO employee Dina McCarty sent defendant MICHAELS an email

27  regarding a request from defendant M. WEEKES for an advance of

28  money.  The email stated that defendant M. WEEKES needed "500 .

1  . .. The repo man has his truck and he says he needs the money

2  for a rental car and was short on payroll.  (Will he ever get it

3  together?)"

4         Overt Act No. 67:   On or about March 14, 2013,

5  defendant MICHAELS replied to the email identified in Overt Act

6  No. 66, "OK.  JESUS!!!!!!!"

7         Overt Act No. 68:   On or about May 2, 2013, defendant

8  M. WEEKES sent a handwritten note to defendant MICHAELS asking

9  for more money.   The note stated,

10         Gil – with my bills and my account base going negative more

11         & more I want to let go of my salespeople for 2-3 weeks.

12         This way I can catch up . . . I know with a little elbow

13         grease I can take this negative down.  I'm short payroll

14         again.   It happens at least twice a month.  I need $1,200

15         to break even.  I can take it out of my totals next week.

16         Please.  Gil, this would be the last time I ask for a bit.

17         I'm tired of living week to week.

18         Overt Act No. 69:   On or about May 22, 2013,

19  defendant FELDMAN possessed in his office at IDC SERVCO a

20  spreadsheet entitled "THIRD PARTY COMPLAINTS FULL YEAR REPORT –

21  2011 DETAILED (BY ISC)" that listed 175 complaints received by

22  IDC SERVCO, and a spreadsheet entitled "THIRD PARTY COMPLAINTS

23  FULL YEAR REPORT – 2010 DETAILED (BY ISC)" that listed 258

24  complaints received by IDC SERVCO.  The spreadsheets identified

25  the Telemarketing Businesses associated with each complaint.

26         Overt Act No. 70:   On or about May 22, 2013,

27  defendants MICHAELS and FELDMAN possessed in the offices of IDC

28

1  SERVCO more than 2,000 complaints from victims stating they had
2  been defrauded with respect to the sale of toner.

## COUNTS TWO THROUGH TWENTY-FIVE

[18 U.S.C. §§ 1341, 2(a), 2(b)]

37.   The Grand Jury realleges and incorporates by reference paragraphs 1 through 30, and paragraphs 32 through 36 of this Indictment as though fully set forth herein.

A.   THE SCHEME TO DEFRAUD

38.   Beginning as early as in or about June 2011, and continuing to in or about June 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants MICHAELS, FELDMAN, LESTER, KATAYAMA, OSTRANDER, MOUSTAKAS, MILHEISER, SANETTI, C. WEEKES, M. WEEKES, ELLIS, JOHNSON, BUZZARD, BRIGHTMAN, PAINE, VIRAG, DIAMOND, WILLIAMS, CADENA, NUNEZ, SCIMECA, C. HILL, and H. HILL and others known and unknown to the Grand Jury, aiding and abetting one another, knowingly and with the intent to defraud, and with willful blindness, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from victims, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

39.   The fraudulent scheme operated, in substance, as set forth in paragraphs 1 through 30, and paragraphs 32 through 36 of this Indictment.

B.   USE OF THE MAILS

40.   On or about the following dates, in Orange and Los Angeles Counties, within the Central District of California, and elsewhere, the following defendants, for the purpose of executing and attempting to execute the above-described scheme

31

1  to defraud, willfully caused, and aided and abetted the causing

2  of, the following items to be placed in an authorized depository

3  for mail matter to be sent and delivered by the United States

4  Postal Service, according to the directions thereon:

| COUNT | DATE | DEFENDANTS | ITEM MAILED |
|---|---|---|---|
| TWO | 2/12/12 | MICHAELS, FELDMAN, and LESTER (DBA Supply Processing Center) | Check no. 40332 in the amount of $1,549.56 from victim United Steelworkers in Ashland, Kentucky, to IDC SERVCO (IDC SERVCO invoice no. 303130) |
| THREE | 11/21/12 | MICHAELS, FELDMAN, and LESTER (DBA Supply Processing Center) | Check no. 13586 in the amount of $3,318.90 from victim TriCity Heating and Cooling, LLC, in Milford, Connecticut, to IDC SERVCO (IDC SERVCO invoice no. 344278) |
| FOUR | 12/14/12 | MICHAELS, FELDMAN, and LESTER (DBA Supply Processing Center) | Check no. 124026 in the amount of $3,439.06 from victim ACD, LLC, in Santa Ana, California, to IDC SERVCO (IDC SERVCO invoice nos. 350313, 350314) |
| FIVE | 5/17/12 | MICHAELS, FELDMAN, and KATAYAMA (DBA Supply Management Center) | Check no. 220379 in the amount of $897.75 from victim City of Gainesville in Gainesville, Georgia, to IDC SERVCO (IDC SERVCO invoice no. 318420) |
| SIX | 11/15/12 | MICHAELS, FELDMAN, and KATAYAMA (DBA Supply Management Center) | Check no. 1159857 in the amount of $1,461.87 from victim Bluegreen Vacations Unlimited in Boca Raton, Florida, to IDC SERVCO (IDC SERVCO invoice no. 340611) |

32

| COUNT | DATE | DEFENDANTS | ITEM MAILED |
|-------|------|------------|-------------|
| SEVEN | 11/30/12 | MICHAELS, FELDMAN, OSTRANDER, and MOUSTAKAS (DBA Supply Fulfillment Center) | Check no. 7500 in the amount of $3,318.90 from victim Signature FD in Atlanta, Georgia, to IDC SERVCO (IDC SERVCO invoice no. 350152) |
| EIGHT | 12/7/12 | MICHAELS, FELDMAN, OSTRANDER, and MOUSTAKAS (DBA Supply Fulfillment Center) | Check no. 4797 in the amount of $3,259.10 from victim PC Crane Services DBA Mountain Crane Services in Riverton, Utah, to IDC SERVCO (IDC SERVCO invoice no. 348498) |
| NINE | 4/3/12 | MICHAELS, FELDMAN, MILHEISER, and SANETTI (DBA Material Distribution Center) | Check no. 2518 in the amount of $10,458 from victim Clarion Partners, LLC, in Los Angeles, California, to IDC SERVCO (IDC SERVCO invoice no. 313357) |
| TEN | 5/2/12 | MICHAELS, FELDMAN, and SANETTI (DBA West Coast Distribution) | Check no. 3758 in the amount of $1,549.56 from victim Agrilogic Insurance Services in Arlington, Texas, to IDC SERVCO (IDC SERVCO invoice no. 317133) |
| ELEVEN | 9/12/12 | MICHAELS, FELDMAN, C. WEEKES and M. WEEKES (DBA Coastal Distribution Center) | Check no. 079795 in the amount of $811.43 from victim White & Company Insurance in Santa Monica, California, to IDC SERVCO (IDC SERVCO invoice no. 336131) |
| TWELVE | 8/23/12 | MICHAELS, FELDMAN, and ELLIS (DBA Delray Supply) | Check no. 2133 in the amount of $1,162.17 from victim Apostolic Christian Preschool in Athens, Alabama to IDC SERVCO (IDC SERVCO invoice no. 330504) |

| COUNT | DATE | DEFENDANTS | ITEM MAILED |
|-------|------|------------|-------------|
| THIRTEEN | 11/13/12 | MICHAELS, FELDMAN, and ELLIS (DBA Delray Supply) | Check no. 54911 in the amount of $5,314.68 from victim Essex Regional Education Services Commission in Fairfield, New Jersey, to IDC SERVCO (IDC SERVCO invoice no. 346827) |
| FOURTEEN | 5/23/12 | MICHAELS, FELDMAN, JOHNSON, and BUZZARD (DBA Capital Supply Center) | Check no. 3774 in the amount of $2,748.36 from victim Century 21 Tawas Realty in East Tawas, Michigan, to IDC SERVCO (IDC SERVCO invoice no. 310733) |
| FIFTEEN | 5/22/12 | MICHAELS, FELDMAN, BRIGHTMAN (DBA Independent Cartridge Supplier) | Check no. 15911 in the amount of $397.86 from Aaron W. Maddox MD PC, in Detroit, Michigan, to IDC SERVCO (IDC SERVCO invoice no. 319656) |
| SIXTEEN | 7/10/12 | MICHAELS, FELDMAN, BRIGHTMAN (DBA Independent Cartridge Supplier) | Check no. 21071 in the amount of $897.75 from victim Dermatology Specialists in Louisville, Kentucky, to IDC SERVCO (IDC SERVCO invoice no. 325594) |
| SEVENTEEN | 2/9/12 | MICHAELS, FELDMAN, and PAINE (DBA Case Distribution Services) | Check no. 14687 in the amount of $498.26 from victim Antero Resources Corp. in Denver, Colorado, to IDC SERVCO (IDC SERVCO invoice no. 303508) |
| EIGHTEEN | 2/24/12 | MICHAELS, FELDMAN, and VIRAG (DBA XL Supply) | Check no. 07121 in the amount of $1,549.56 from victim YMCA in Youngstown, Ohio, to IDC SERVCO (IDC SERVCO invoice no. 304883) |

| COUNT | DATE | DEFENDANTS | ITEM MAILED |
|-------|------|-----------|-------------|
| NINETEEN | 5/25/12 | MICHAELS, FELDMAN, DIAMOND, and WILLIAMS (DBA Specialty Business Center) | Check no. 26122 in the amount of $1,461.87 from victim Thibaut, Inc., DBA Thibaut Wallpaper and Fabrics in Newark, New Jersey, to IDC SERVCO (IDC SERVCO invoice no. 316209) |
| TWENTY | 4/20/12 | MICHAELS, FELDMAN, CADENA, and NUNEZ (DBA Warehouse Service Center) | Check no. 14326 in the amount of $6,162.86 from victim Giant Creative Strategy in San Francisco, California, to IDC SERVCO (IDC SERVCO invoice no. 311301) |
| TWENTY-ONE | 6/26/12 | MICHAELS, FELDMAN, CADENA, and NUNEZ (DBA Warehouse Service Center) | Check no. 4370 in the amount of $9,758.04 from victim Criterion Capital Management in San Francisco, California, to IDC SERVCO (IDC SERVCO invoice no. 323891) |
| TWENTY-TWO | 2/23/12 | MICHAELS, FELDMAN, and SCIMECA (DBA Supply Central Distribution) | Check no. 52287 in the amount of $2,168.07 from victim Yorba Linda Country Club in Yorba Linda, California, to IDC SERVCO (IDC SERVCO invoice nos. 301046, 301049, and 301050) |
| TWENTY-THREE | 8/6/12 | MICHAELS, FELDMAN, and SCIMECA (DBA Supply Central Distribution) | Check no. 1973 in the amount of $1,214.06 from victim Kaiser Benefit Trust in Fontana, California, to IDC SERVCO (IDC SERVCO invoice no. 332321) |
| TWENTY-FOUR | 4/25/12 | MICHAELS, FELDMAN, C. HILL and H. HILL (DBA Distribution Service Center, Inc.) | Check no. 60266 in the amount of $2,741.70 from victim F&L Salvage & Towing in Centralia, Illinois, to IDC SERVCO (IDC SERVCO invoice no. 313105) |

| COUNT | DATE | DEFENDANTS | ITEM MAILED |
|-------|------|-----------|-------------|
| TWENTY-FIVE | 8/15/12 | MICHAELS, FELDMAN, C. HILL and H. HILL (DBA Distribution Service Center, Inc.) | Check no. 1029711 in the amount of $2,324.34 from victim RW Armstrong in Cleveland, Ohio, to IDC SERVCO (IDC SERVCO invoice no. 323261) |

1    COUNTS TWENTY-SIX THROUGH TWENTY-EIGHT

2    [18 U.S.C. §§ 1956(a)(1)(A)(i), 2(a)]

3         41.   The Grand Jury repeats, realleges, and incorporates

4    paragraphs 1 through 30, and paragraphs 32-40 of this Indictment

5    as though fully set forth herein in their entirety.

6         42.   On or about the following dates, in Los Angeles

7    County, within the Central District of California, and

8    elsewhere, defendant MICHAELS knowingly conducted, attempted to

9    conduct, and aided, abetted, counseled, commanded, induced and

10   procured the following financial transactions affecting

11   interstate and foreign commerce, knowing that the property

12   involved in the financial transactions represented the proceeds

13   of some form of unlawful activity, and which property was, in

14   fact, the proceeds of specified unlawful activity, that is, mail

15   fraud, in violation of Title 18, United States Code, Section

16   1341, with the intent to promote the carrying on of specified

17   unlawful activity:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| TWENTY-SIX | 2/6/12 | G.N.M. Financial Services Inc. check no. 22200 in the amount of $8,000 to Coastal Distribution Center |
| TWENTY-SEVEN | 2/8/12 | G.N.M. Financial Services Inc. check no. 22203 in the amount of $3,000 to Case Distribution Services |
| TWENTY-EIGHT | 2/22/12 | G.N.M. Financial Services Inc. check no. 22274 in the amount of $1,200 to Material Distribution Center |

COUNTS TWENTY-NINE AND THIRTY

[18 U.S.C. § 1957]

43.   The Grand Jury repeats, realleges, and incorporates paragraphs 1 through 30, and paragraphs 32-40 of this Indictment as though fully set forth herein in their entirety.

44.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant MICHAELS, knowing that the funds involved represented the proceeds of some form of unlawful activity, engaged, and willfully caused others to engage in, the following monetary transactions affecting interstate commerce, in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| TWENTY-NINE | 8/29/12 | Wire transfer of $190,950.00 from Cathay Bank account ending 0241 in the name of Gil Michaels to First American Title Insurance |
| THIRTY | 10/9/12 | Wire transfer of $1,714,267.73 from Cathay Bank account ending 0241 in the name of Gil Michaels to First American Title Insurance |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

45.   Pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Rule 32.2(a), Fed. R. Crim. P., if defendant MICHAELS is convicted of any of the offenses set forth in Counts One through Thirty of this Indictment, he shall forfeit to the United States the following property:

a.   All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any offense charged in each such Count, including but not limited to

- $161,298.06 seized from Mytel International, Inc.

- $775,841.70 seized from G.N.M. Financial Services

- $3,109,163.45 seized from Gilbert Michaels; and

b.   A sum of money equal to the total value of the property described in subparagraph a.

46.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), defendant MICHAELS shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of defendant MICHAELS, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e)

1 | has been commingled with other property that cannot be divided
2 | without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

47.   Pursuant to Title 18, United States Code, Section 982, and Rule 32.2(a), Fed. R. Crim. P., if defendant MICHAELS is convicted of any of the offenses set forth in Counts One through Thirty of this Indictment, he shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property.

48.   Pursuant to Title 21, United States Code, Section 853(p) and Title 18, United States Code, Section 982(b)(2), the defendant shall forfeit substitute property, if, by any act or omission of the defendant, the property described in paragraph 47, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has

////
////
////
////
////
////
////
////
////
////
////
////

1 | been commingled with other property that cannot be divided
2 | without difficulty.
3 |
4 |                                   A TRUE BILL
5 |
6 |
7 |                          _____
8 |                          Foreperson
9 |
10 | EILEEN M. DECKER
    | United States Attorney
11 |
12 | LAWRENCE S. MIDDLETON
    | Assistant United States Attorney
13 | Chief, Criminal Division
14 |
    | DENNISE D. WILLETT
15 | Assistant United States Attorney
    | Chief, Santa Ana Branch Office
16 |
    | GREGORY W. STAPLES
17 | Assistant United States Attorney
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |